IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CARRASQUILLO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-CV-xxxxx |
| | ) | |
| INV. TIMOTHY YOUNG, INV. ANTONIO, | ) | |
| PISCOPO, SGT JEFFREY TATE, and | ) | |
| the CITY OF AURORA, IL | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, MICHAEL CARRASQUILLO, by and through his attorney, GENEVA L. PENSON, and complaining against the Defendants, INV. TIMOTHY YOUNG, INV ANTONIO PISCOPO, SGT JEFFERY TATE, and the CITY OF AURORA, IL states as follows:

INTRODUCTION

1. This action is brought seeking damages as redress for Defendants' violations of the Plaintiffs' rights enumerated under the Fourth and Fourteenth Amendments to the Constitution of the United States of America, which violations resulted from the Defendants' unlawful use of excessive force against the Plaintiff, connected with an incident occurring on November 9, 2020 wherein Defendant's body slammed Plaintiff, causing his head to strike the ground, punched Plaintiff repeatedly, elbowed Plaintiff in the face, and otherwise hit Plaintiff resulting in bodily and personal injury, which caused the Plaintiff damages, including personal and pecuniary injuries. Defendants thereafter falsely accused Plaintiff of resisting arrest, and, upon his release, prevented Plaintiff and his parents from filing a personnel complaint with the

Aurora Police Department.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. Sec.1331 and Sec.1343(a)(3) as the Federal Claims are brought under 42 U.S.C. Sec.1983 and venue pursuant to 28 U.S.C. Sec.1391(b) as the majority of parties reside in this district and the events giving rise to the claims occurred in this district. The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. Sec.1367(a).

## THE PARTIES

3. On November 9, 2020 and at all relevant times herein, the Plaintiff Michael Carrasquillo, who was then a minor, was a citizen of the United States and enjoyed all the rights and entitlements enumerated in the Constitution of the United States of America and all Amendments thereto.

4. On November 9, 2020 and at all relevant times herein, the Defendant Timothy Young was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Young is sued in his individual capacity. Upon information and belief, the Defendant resides in Kane County, Illinois.

5. On November 9, 2020 and at all relevant times herein, the Defendant Antonio Piscopo was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Piscopo is sued in his individual capacity. Upon information and belief, the Defendant resides in

Kane County, Illinois.

6. On November 9, 2020 and at all relevant times herein, the Defendant Jeffery Tate was a duly sworn peace officer under the laws of the State of Illinois possessed of law enforcement authority under Illinois law, and at all relevant times set forth herein was acting under color of law and within the scope of his employment with the City of Aurora. Defendant Tate is sued in his individual capacity. Upon information and belief, the Defendant resides in Kane County, Illinois.

7. On November 9, 2020 and at all relevant times herein, the Defendant City of Aurora, IL was a municipal corporation organized and chartered under the laws of the State of Illinois, obligated to indemnify employees for judgments resulting from conduct occurring within the scope of employment and employing unknown police officers or police personnel herein. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments and employees and for injury occasioned thereby. It was also the public employer of all of the individual Defendants.

## STATEMENT OF FACTS

8. Plaintiff was arrested by officers of the Aurora Police Department on or about November 9, 2020.

9. Prior to his arrest, Plaintiff had been spending time with his family at the dog park at Lincoln Park on the west side of Aurora, Illinois.

10. At approximately 6:00 p.m., Plaintiff and his family prepared to leave the park. Plaintiff's parents and their other child were leaving in the family car. Plaintiff was on his bicycle. Plaintiff received his parents permission to meet two friends to ride their bicycles along the Gilman Trail in Aurora, Illinois.

11. Plaintiff met two friends, Diego Chavez and Niko Balestros, near Elmwood and Gleason Avenues. They rode their bicycles on Galena toward downtown Aurora, getting on the Gilman trail near Copley Park.

12. Around Galena and Russell, Plaintiff and his friends saw an unmarked, black car pull in front of them and cut them off. Two men jumped out. Although Plaintiff and his friends did not initially know that the men were police officers, those two men were Aurora Police Investigators Young and Piscopo.

13. Defendants Young and Piscopo asked "What are you doing?" Defendants Young and Piscopo asked Plaintiff and his friends if they had guns. Plaintiff responded that he did not have a gun, but only had his wallet and keys. Defendants Young and Piscopo said they were going to search the boys.

14. Defendant Piscopo took Plaintiffs friends to one side and searched them. Defendant Young searched Plaintiff, including placing his hands on Plaintiff's groin.

15. Defendant Young suddenly and without explanation body slammed Plaintiff, causing Plaintiff's head to hit the ground. Defendant Young hit Plaintiff in the stomach and abdomen repeatedly. Young elbowed Plaintiff in the face and hit him in the head. Additional Aurora Police officers eventually showed up, and one of them told Young "Stop hitting him." Young then stopped hitting Plaintiff.

16. Defendant Piscopo got Plaintiff up off the ground and told him he was being arrested. Plaintiff asked to call his mom.

17. An officer called Plaintiff's mom, and she went to the scene, where she saw her son covered in grass and some dirt.

18. Plaintiff was taken to the Aurora Police station on East Indian Trail, in Aurora,

Illinois. A sergeant on duty told Plaintiff's mom that Plaintiff was free to go, and officers released Plaintiff.

19. After Plaintiff was released from the lock-up area, Plaintiff and his mom went around to the station's reception desk, where they were joined by Plaintiff's father. Plaintiff and his parents informed the woman at the desk that they wanted to file a complaint against Defendant Young.

20. The woman told them that Defendant Young was a Special Operations officer, and they must speak with the Special Operations sergeant.

21. Defendant Jeffery Tate, who is the Special Operations sergeant, came to the reception area and invited Plaintiff's parents and Plaintiff into a nearby conference room. Plaintiff's parents told Defendant Tate they wanted to file a complaint. Defendant Tate responded that they couldn't just file a complaint, and he had his officer on the way to straighten things out.

22. Defendant Young eventually came into the conference room. Defendant Tate then started questioning Plaintiff. Defendant Tate repeatedly interrupted Plaintiff when he tried to answer and attempted to persuade Plaintiff to say that he had given Defendant Young permission to search him.

23. Plaintiff's parents said repeatedly, 15 to 20 times, that they wanted to file a complaint. Defendant Young yelled at them. Defendant Tate told them they were not filing a complaint. Plaintiff's father ended the questioning of Plaintiff. Plaintiff's mother remained inside to allow Defendant Tate to take pictures of Plaintiff.

24. When Plaintiff and his parents left the police station, they took Plaintiff to Rush Copley Hospital, where he was treated for a headache, rib pain, and knee pain. Plaintiff was

referred to a specialist for concussion care. Plaintiff was diagnosed with a concussion.

25. As a result of Defendants' conduct, Plaintiff was sustained a concussion, a closed head injury, bruises and small cuts to his face and body.

26. On or about February 2, 2021, the State filed a Petition for Adjudication, seeking to adjudicate Plaintiff delinquent in *In re Michael Carrasquillo*, Kane County Circuit Court No. 21 JD 24. The petition alleged Plaintiff had committed the offense of Resisting A Peace Officer, a Class A Misdemeanor.

27. On August 24, 2021, Plaintiff filed his Motion to Suppress Evidence, in that juvenile court proceeding, alleging that on November 9, 2020, Defendants had illegally searched and arrested him in violation of the Fourth Amendment to the U.S. Constitution.

28. On March 30, 2022, the Kane County Circuit Court granted Plaintiff's Motion to Suppress Evidence, after a hearing at which Plaintiff and Defendant Young testified. The court found that Defendants had lacked probable cause or a reasonable, articulable suspicion for their stop and frisk/search of Plaintiff.

29. The State moved to reconsider, but on June 29, 2022, the circuit court denied the State's Motion to Reconsider.

30. On June 29, 2022, the State dismissed its Petition for Adjudication, terminating its prosecution of Plaintiff.

COUNT I
FOURTH AMENDMENT VIOLATION
EXCESSIVE FORCE 42 U.S.C. Sec. 1983

31. Plaintiff incorporates herein paragraphs 1 – 30 above as though fully set forth herein.

32. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures and to be secure in his person, including freedom from the use of unreasonable and/or excessive force against him. On November 9, 2020, the individual defendants used unlawful and unreasonable force against the Plaintiff without lawful justification.

33. Defendants were not justified in using physical force, including body slamming or taking Plaintiff down, punching plaintiff, elbowing Plaintiff in the face, or otherwise striking Plaintiff. No prudent officer would have used such force against the Plaintiff under the circumstances. It was unreasonable and unnecessary for defendants to have used physical force on Plaintiff's person.

34. Defendants' acts jointly and severally injured Plaintiff.

35. As described above, the conduct of Defendants was intentionally carried out, under color of law and within the scope of their employment, with willful, wanton, reckless disregard, and/or deliberate indifference to the health and welfare, and rights, of Plaintiff, and constituted the excessive use of force in violation of the Fourth Amendment to the Constitution of the United States.

36. As the proximate result of the unlawful and excessive use of force by Defendants, which violated Plaintiff's rights, Plaintiff has suffered and continues to suffer injuries of a personal and pecuniary nature.

WHEREFORE the Plaintiff demands judgment against Defendants Young and Piscopo, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

## COUNT II
## FOURTH AMENDMENT VIOLATION
## (FAILURE TO INTERVENE) 42 U.S.C. Sec. 1983

37. Plaintiff incorporates paragraphs 1 – 36 above as though fully set forth herein.

38. At all relevant times herein, Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures, including the use of excessive force, and to be secure in his person.

39. During the events described herein, Defendants stood by and failed to intervene to prevent the unconstitutional and unreasonable seizure of Plaintiff's person, and the use of excessive force and subsequent injury caused by the defendants during that seizure. At all relevant times herein, Defendant Officers were acting under color of law and within the scope of their employment.

40. As the proximate result of the failure of Defendants to intervene on behalf of Plaintiff to prevent the use of excessive force, and the unreasonable seizure of his person, despite the clear need and reasonable opportunity to do so, the Plaintiff has suffered and continues to suffer injuries of a personal and pecuniary nature, loss of property, loss of reputation, humiliation, mental anguish, emotional distress, and legal expenses, as alleged herein

WHEREFORE the Plaintiff demands judgment against Defendants Young, Piscopo, and Tate, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

## COUNT III
### FOURTH AMENDMENT VIOLATION UNLAWFUL SEARCH, SEIZURE, AND RESTRAINT
### 42 U.S.C. Sec. 1983

41. Plaintiff incorporates herein paragraphs 1 – 40 above as though fully set forth herein.

42. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable seizures and to be secure in his person from having his liberty unlawfully restrained.

43. On or about November 9, 2020, Defendants Young and Piscopo effected the unlawful seizure, detention, and restraint of the Plaintiff, without lawful authority in the form of reasonable articulable suspicion, probable cause, a judicial warrant or writ, or other factual or legal justification.

44. At all times relevant herein, Defendants were acting under color of law and their individual conduct as described hereinabove was done with willful, wanton, reckless disregard, and/or deliberate indifference to the rights of the Plaintiff.

45. Defendant's individual acts violated Plaintiff's right to be free from unreasonable seizure, and unlawful arrest, as provided in the Fourth Amendment to the United States Constitution and has caused Plaintiff to suffer and will in the future continue to suffer, severe damages including loss of reputation, mental anguish, emotional distress and legal expenses as alleged herein.

WHEREFORE, the Plaintiff demands judgment against Defendants Young, Piscopo, and Tate, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

COUNT IV
CIVIL CONSPIRACY
42 U.S.C. Sec. 1983

46. Plaintiff incorporates herein paragraphs 1 – 45 above as though fully set forth herein.

47. Defendants knowingly and intentionally reached an agreement to deprive Plaintiff of his constitutional right to submit a complaint regarding police use of excessive force.

48. In furtherance of this conspiracy, Defendants Young and Tate committed the overt act of intimidating Plaintiff and his parents when they were attempting to make their complaint.

WHEREFORE, the Plaintiff demands judgment against Defendants Young, Piscopo, and Tate, jointly and severally, for compensatory and punitive damages, costs incurred herein and attorney fees, in a sum in excess of $100,000.00.

COUNT V
INDEMNIFICATION CLAIM
745 ILCS 10/9-102

49. Plaintiff incorporates herein paragraphs 1 – 48 above as though fully set forth herein.

50. The acts of Defendants Young, Piscopo, and Tate described in the above claims were willful and wanton, and were committed in the scope of employment.

51. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Aurora, Il is liable for any judgments in this case arising out of Defendants Young, Piscopo, & Tate's actions.

WHEREFORE the Plaintiff asks that this Honorable Court order Defendant, City of Aurora, IL to indemnify Defendants Young, Piscopo, & Tate for any judgment entered in this case arising from their actions.

COUNT VI
42 U.S.C. Sec. 1983 VIOLATION
CITY OF AURORA
(MONELL LIABILITY)

52. Plaintiff incorporates herein paragraphs 1 – 51 above as though fully set forth herein.

53. At all relevant times herein, the Plaintiff enjoyed and possessed a right under the Fourth and Fourteenth Amendments to the Constitution of the United States to be ensured due process, and be free from unreasonable seizures, including the use of excessive force, to be secure in his person, and to make personnel complaints against Aurora police officers.

54. During the events described herein, certain Supervisory Personnel, agents or employees of the City of Aurora with policy-making authority, including Defendant Tate, but also others whose names and titles are presently unknown to Plaintiff, had a duty to supervise and set policy and standards for the use of force, and procedures and standards concerning arrests, as well as to hire, discipline, and fire Aurora Police Officers.

55. This individual or these individuals failed to adequately supervise, train, or set policy to prevent violations of the Plaintiff's constitutional rights. These individuals encouraged the violation of Plaintiff's rights in that they failed to ensure that standards were set or followed with regard to the use of force, and that arrests and seizures were not made without probable cause or the appropriate legal standard.

56. These individuals failed to adequately supervise, train, or set policy to prevent

violations of Plaintiff's constitutional rights in that these individuals tolerated repeated violations of the civil rights of defendants at the hands of Defendants Young, Piscopo, and Tate, and did nothing to correct, train, discipline, or otherwise relieve Defendants of authority or duties involving the use of force, the decision to arrest, or the filing of personnel complaints against police officers until Plaintiff had been injured thereby.

57. As a result of the individual or individuals failure to properly discipline or investigate officers, including specifically Defendants Young, Piscopo, and Tate, City of Aurora police officers, including specifically defendants were encouraged and led to believe that their improper and unconstitutional conduct would not be scrutinized or punished. These failures created an informal policy or custom which resulted in the violations of Plaintiff's rights alleged herein.

58. This complete failure to address, discipline, or respond in any way to the continued unconstitutional actions of Defendants, committed on both Plaintiff and other individuals, was the proximate cause of the violations of Plaintiff's constitutional rights resulting from Defendants' actions on November 9, 2020.

59. The supervisory failures of these individuals and unknown supervisory officers were the direct and proximate cause of the constitutional violations visited on Plaintiff.

60. As the proximate result of these individuals failure to supervise or otherwise set or enforce policy and procedures, the defendant City failed to prevent and in fact encouraged and caused the use of excessive force, the unreasonable seizure and detention of the plaintiff, and the deprivation of Plaintiff's right to file a personnel complaint against Aurora police officers.

61. Prior to November 9, 2020 through the actions and inactions of its policy-making personnel, the City of Aurora developed and maintained policies or customs exhibiting

deliberate indifference to the constitutional rights of persons in Aurora, which proximately caused the violation of Plaintiff's rights.

62. It was the policy and/or custom of the City of Aurora and its officers to inadequately and improperly take, investigate, and resolve complaints of police misconduct relating to arrests and the use of excessive force and such acts of misconduct were instead tolerated by the City of Aurora.

63. It was the policy and/or custom of the City of Aurora to inadequately supervise and train its police officers, including the Defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in despite complaints from citizens.

64. As a result of the above described policies and customs, police officers of the City of Aurora, including the Defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

65. The City of Aurora failed to train and supervise its officers, and failed to implement policies, to prevent constitutional violations relating to the use of excessive force on subject citizens and the arrests and detentions of citizens without probable cause.

66. The City of Aurora failed to monitor and supervise its officers regarding the use of force, failed to make reasonable regular inquiries into, or otherwise determine the level of force being utilized by officers during encounters with citizens including arrests, and failed to take reasonable steps to prevent its officers from using excessive force.

67. The above described policies and customs demonstrated a deliberate indifference

on the part of policymakers of the City of Aurora to the constitutional rights of persons within the City, and were the proximate cause of the violations of Plaintiff's rights alleged herein. As a direct and proximate result of the municipality's failures and actions, Plaintiff suffered physical injury, loss of reputation, humiliation, mental anguish, emotional distress, and legal expenses, as alleged herein.

WHEREFORE the Plaintiff demands judgment against the Defendant, City of Aurora, IL for compensatory damages, costs incurred herein and attorney fees in a sum in excess of $100,000.00.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted by:

By: /s/ Geneva L. Penson
GENEVA L. PENSON, Atty No. 6275680
52 W. Downer Pl., #301
P.O. Box 2285
Aurora, IL 60507-2285
(630) 844-6960
geneva_penson@att.net