UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CARRASQUILLO,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY YOUNG, et al.,<br><br>Defendants. | No. 22 CV 6272<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Michael Carrasquillo, then a minor, was with two friends riding bicycles when they were stopped by Officers Timothy Young and Antonio Piscopo of the Aurora, Illinois, Police Department. During a pat-down search of Carrasquillo, Young took down Carrasquillo, who hit his head on the ground and suffered a concussion. While Carrasquillo was on the ground, Young punched him in his side and abdomen and elbowed him in the face. Carrasquillo and his parents wanted to file a complaint, but were told by Special Operations Sergeant Jeffery Tate that they could not file one. Carrasquillo brings this suit under 42 U.S.C. § 1983 against Officer Young for excessive use of force and unlawful search, seizure, and restraint in violation of the Fourth Amendment, against Officer Piscopo for failure to intervene in violation of the Fourth Amendment, and civil conspiracy against Officers Young and Piscopo and Sergeant Tate. He seeks indemnification for these claims against the Aurora Police Department. And finally, he asserts that the City of Aurora is independently liable for its failure to supervise, train, investigate, discipline, or set

policy to prevent violations of Carrasquillo's rights. Defendants move for summary judgment. For the reasons discussed below, the motion is granted in part and denied in part.

I.  **Legal Standard**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I view all the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1010 (7th Cir. 2022).

"Even if a party opposing summary judgment presents no evidence at all, summary judgment is improper when the movant's own submissions do not establish the absence of a genuine issue of material fact." *Cartwright v. City of Chicago*, 450 Fed. Appx. 539, 541–42 (7th Cir. 2011) (finding that the movant's inclusion of a deposition in support of summary judgment "in fact highlight[ed] the factual dispute" at issue). *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) ("And, in a comment directed specifically to a contention like respondent's, the Committee stated that '(w)here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'"); *Anderson*, 477 U.S. at 249 (reaffirming *Adickes*).

## II. Facts

Around 6:30 p.m. on November 9, 2020, plaintiff Michael Carrasquillo was out riding his bicycle with two friends near a house known as an active Latin King gang house. [33] ¶ 2.[1] Special Operations Officers Timothy Young and Antonio Piscopo of the Aurora Police Department were patrolling that area that evening. [33] ¶¶ 1–2. The three bicyclists rolled through a stop sign, and Young and Piscopo got out of their car to conduct a stop. [33] ¶¶ 3, 6. Young and Piscopo noticed that one of them was wearing red and black, which are colors associated with the Latin King gang. [33] ¶ 4. Young instructed Carrasquillo and the others to keep their hands where he could see them and asked what they were doing. [33] ¶ 7. They told Young they were riding their bikes to their friend's house to take him home. [33] ¶ 7. Carrasquillo acted nervously and was fidgeting with his waistband. [33] ¶ 8.

Young noticed that there was an item weighing down Carrasquillo's sweatshirt pocket, creating a bulge. [33] ¶¶ 8, 12. Young and Piscopo announced a pat-down search. [33] ¶ 8; [32-1] at 13 (50:22–24). Piscopo patted down Carrasquillo's friends without incident. [33] ¶¶ 9–10. Young went to pat down Carrasquillo, who said he was only carrying his keys and wallet in his side pocket. [33] ¶ 11. He did not say that he was carrying his cell phone in his front sweatshirt pocket, which caused the bulge.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. In the case of citations to depositions, I also use the deposition transcript's original page numbers. The facts are largely taken from the defendant's Local Rule 56.1 statement of facts, [33]. Plaintiff forfeited his response to defendants' statement of facts. *See* [38], [41], [44], [50]. Defendants' facts are deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). But to decide whether there are material facts in dispute, I consider competent deposition testimony that defendants filed as part of the record. *See* Fed. R. Civ. P. 56(c)(3).

[33] ¶ 11. Young claims that Carrasquillo kept trying to "pull[] his arms downward towards his sides, and kept reaching for his waistband." [33] ¶ 14. However, Carrasquillo testified that he did not resist, he kept his hands in the air the whole time, following Young's orders, and it was Young who tried to pull his hands down. [32-1] at 21–23 (84:17–85:16, 86:3–17, 88:10–19, 89:20–23), 27 (108:15–18); [33-5] at 42–43 (419:21–422:9, 422:15–17). Young then took Carrasquillo to the ground. [33] ¶ 20; [32-1] at 28 (109:3–5). Piscopo came over to help Young and grabbed Carrasquillo's right arm. [33] ¶¶ 21, 23.

Defendants admit that Young punched Carrasquillo once, what they describe as a single strike to gain compliance. [33] ¶ 24. Carrasquillo and one of his friends testified that Young punched Carrasquillo multiple times, somewhere between four and twelve times. [32-1] at 28–29 (109:17–110:2, 113:19–114:1); [33-1] at 13 (51:16–19), 14 (56:14–17); [33-5] at 42–43 (420:23–421:8). Carrasquillo also testified that Young "elbowed [him] in the face to get me to lay on the side." [32-1] at 28–29 (110:2–4, 114:1–5, 116:6–14). Carrasquillo said he did not try to put his hands up or protect himself. [32-1] at 29 (115:2–7). He said he was compliant during the entire interaction, and did not resist at any point. [32-1] at 29–30 (116:23–117:1); [33-5] at 43 (421:24–422:9). Carrasquillo was handcuffed, and officers found a vape pen that tested positive for cannabis under his body. [33] ¶ 25; [32-1] at 30 (117:1–2). Young and Piscopo brought Carrasquillo to the Aurora Police Department, where he was

4

charged with resisting a peace officer and violating a civil ordinance for possession of cannabis by a minor. [33] ¶ 26.[2]

Carrasquillo's parents sought to file a complaint against Young. [33] ¶ 28. Carrasquillo and his parents met with Special Operations Lieutenant Jeffery Tate and Officer Young in a conference room at the Aurora police station. [33] ¶ 29. Officer Young gave his version of the events. [33] ¶ 30. Carrasquillo's stepfather told Carrasquillo not to say anything to Tate. [33] ¶ 31. Tate took photos of Carrasquillo's injuries. [32-1] at 41 (162:22–163:24); [33-3] at 17 (64:12–24). He later interviewed Carrasquillo's two friends. [33] ¶ 33. Tate also invited Carrasquillo's mother to return to the police station with Carrasquillo so he could give a statement. [33] ¶ 34. Carrasquillo's mother initially agreed but changed her mind and did not come to the station. [33] ¶¶ 35–36.

## III. Analysis

### A. Excessive Force

The Fourth Amendment "guarantees citizens the right to be secure in their persons … against unreasonable ... seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). To determine what constitutes a "reasonable seizure" a reviewing court must examine the totality of the circumstances "from the perspective of a reasonable officer on the scene" paying "careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

---

[2] The Kane County Circuit Court suppressed the evidence in Carrasquillo's juvenile court proceeding, and the petition for adjudication was dismissed. [10] ¶¶ 27–30.

5

he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. This is an objective analysis, where the court must "balanc[e] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* An officer's subjective beliefs and motivations are irrelevant. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018). A reviewing court can look at each discrete use of force to see if it is justified by the circumstances. *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018).

The officers assert qualified immunity for the use of force. Government actors performing discretionary functions are immune from any suit for damages so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713 (7th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court asks whether the defendants violated a plaintiff's constitutional right, and whether defendants should have known that they were violating plaintiff's constitutional rights when they acted (although a court can decide which question to answer first). *Abbott*, 705 F.3d at 713; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Carrasquillo "bears the burden of defeating [qualified immunity] either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott*, 705 F.3d at 723–24 (internal citation omitted). For a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable officer would

6

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To determine whether a right is clearly established, a court should look to "controlling precedent from both the Supreme Court and this circuit, and if there is no such precedent we cast a wider net and examine all relevant case law to determine whether there was such a clear trend in the case law that we can say with a fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Abbott*, 705 F.3d at 731.

An officer may use no more than minimal force on a suspect who is only passively resisting arrest. *See Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020) ("Unlike when someone is passively refusing to move or follow lawful commands, the police may use significant force to subdue someone who is actively resisting lawful detention."); *Abbott*, 705 F.3d at 732 ("[O]nly a minimal amount of force may be used on [passively resisting suspects]."); *Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021) ("[C]ontinuing to apply unnecessary force against a civilian once he is already subdued may be an unreasonable use of force."); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (suspect demonstrated "only passive resistance" when he was lying with his arms outstretched and obeying every order except for the order to put his hands behind his back). The "prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller*, 761 F.3d at 829.

7

Whether Carrasquillo resisted arrest is disputed by the record evidence, so summary judgment is inappropriate on the excessive force claim. Taking the facts in the light most favorable to Carrasquillo, he was compliant with Young's orders, was taken to the ground, and punched at least once—and, according to both Carrasquillo and his friend, punched at least four times. [32-1] at 21–22 (84:17–85:16, 86:3–17, 88:10–19); [33-1] at 13 (51:16–19), 14 (56:14–17); [33-5] at 42–43 (419:21–422:9, 422:15–17). Depending on how it resolved the factual disputes, a jury could find that Young used excessive force.

Qualified immunity is likewise inappropriate because the disputed facts directly implicate whether Young knew that taking Carrasquillo to the floor, punching Carrasquillo, and elbowing him in the face violated Carrasquillo's constitutional right not to be subjected to force when Carrasquillo was compliant. It is clearly established that taking someone to the floor or punching or elbowing someone who is not resisting or who is passively resisting is excessive. *Abbott*, 705 F.3d at 732; *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (grabbing plaintiff, twisting his arm, shoving, and taking him to the floor unreasonable where plaintiff was "docile and cooperative"); *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (even where plaintiff was not fully cooperative, tackling plaintiff was unreasonable); *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019) ("On-the-spot punishment, not reasonably adapted to obtain or keep control, violates the Fourth Amendment.").

In terms of Piscopo's involvement, Carrasquillo has put forth no separate facts showing Piscopo hit Carrasquillo, tackled him, or elbowed him. To the extent Carrasquillo claims Piscopo engaged in separate excessive force, Piscopo is entitled to summary judgment.

But Piscopo's failure to intervene in the alleged wrongdoing of Young is itself "a form of personal involvement in [Young's] misconduct," and thus Piscopo can be held liable for failure to intervene. *Sanchez v. City of Chicago*, 700 F.3d 919, 928 (7th Cir. 2012). Issues of fact prevent an entry of judgment on Piscopo's failure to intervene while Young tackled, punched, and delivered elbow strikes to Carrasquillo. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know … excessive force was being used and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022). As discussed above, whether Young used excessive force turns on whether Carrasquillo actively resisted arrest. As to Piscopo, "whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id*. It is undisputed that Piscopo was watching Young, and ran towards Young as Young took Carrasquillo to the ground. [33] ¶¶ 20–21. Piscopo helped Young by grabbing Carrasquillo's right arm just before Young punched Carrasquillo. [33] ¶¶ 21–24. The undisputed facts show that Piscopo was near Young and Carrasquillo

9

and held Carasquillo's arm when Young punched Carrasquillo. A jury would have to decide whether Piscopo knew of, and had an opportunity to prevent, excessive force.

Carrasquillo also names Officer Young and Sergeant Tate in the failure-to-intervene count. Young's liability turns on his direct conduct against Carrasquillo; there is no room for (or doctrinal value in) failing to intervene with himself. Young is entitled to summary judgment on the failure to intervene count. Sergeant Tate may be held liable for Piscopo's failure to intervene only if he knew about the conduct and "facilitate[d], approve[d], condone[d], or turn[ed] a blind eye toward it." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 828 (7th Cir. 2022). A supervisor is only liable if he acted purposely, knowingly, or recklessly, but not negligently. *Id*. Although Tate was not present for nor did he participate in Young's use of force or Piscopo's failure to intervene, Tate later learned of the conduct. *See* [33] ¶¶ 28, 29, 33. There is no evidence in the record that Tate condoned or turned a blind eye to it. The undisputed facts show that Tate attempted to investigate Carrasquillo's claims, interviewed other witnesses, took photos of Carrasquillo's injuries, and attempted to take a statement from Carasquillo himself. He also invited Carrasquillo's mother to return with Carrasquillo to the station to discuss the incident. However, neither Carrasquillo nor his mother ever spoke with Tate, despite invitations to do so. Tate did undertake an investigation, and any claim of condoning excessive force fails as a matter of law.

10

### B. Unlawful Search, Seizure, and Restraint

#### 1. *Unlawful Seizure and Restraint*

Probable cause is "an absolute defense to any § 1983 claim against a police officer for false arrest." *Abbott*, 705 F.3d at 713–14. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714; *accord Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). "When a police officer reasonably believes that a driver has committed a minor traffic offense, probable cause supports the stop." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (quoting *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013)). An officer does not violate the Fourth Amendment when he arrests a person "for even a very minor traffic offense." *Id.*

A police officer is entitled to qualified immunity on a false-arrest claim when "a reasonable officer could have mistakenly believed that probable cause existed … as long as the officers reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest, then they are entitled to qualified immunity." *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021) (internal citations omitted).

Defendants argue that Young and Piscopo had reasonable suspicion to stop plaintiff because he was riding his bicycle without a headlamp, and because he rolled through a stop sign. [33] ¶ 3. Carrasquillo in his deposition contests that he was riding his bicycle without a headlamp. [32-1] at 10 (38:2–14); [33-5] at 45 (426:10–20). However, nowhere does he say he did not roll through a stop sign. Thus, it is

11

undisputed that Carrasquillo rolled through a stop sign. "Traffic laws apply to persons riding bicycles." 625 ILCS 5/11-1502. Rolling through a stop sign provides probable cause for an arrest. *United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022); 625 ILCS 5/11-1204. Defendants are entitled to summary judgment on plaintiff's unlawful seizure and restraint claims.

### 2.  *Unlawful Search*

A frisk requires a separate analysis from the initial stop. *See United States v. Adair*, 925 F.3d 931, 937 (7th Cir. 2019). "To justify a patdown of the driver or passenger during a traffic stop… the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *United States v. Smith*, 32 F.4th 638, 641 (7th Cir. 2022). A frisk must be "justified in light of 'the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience,' as opposed to the officer's 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Colbert*, 54 F.4th 521, 526 (7th Cir. 2022) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Nervousness "may contribute to reasonable suspicion because it is 'frequently recognized as a sign that a suspect has something to hide, including a weapon.'" *Id.* at 529 (quoting *United States v. Patton*, 705 F.3d 734, 740 (7th Cir. 2013)). A bulge in a suspect's clothing is also a circumstance contributing to reasonable suspicion. *United States v. Avila*, 106 F.4th 684, 697 (7th Cir. 2024); *Colbert*, 54 F.4th at 529. So too is a person's presence in a high crime area. *United States v. Richmond*, 924 F.3d 404, 411–12 (7th Cir. 2019).

Carrasquillo and his friends were stopped near a known, "extremely active" Latin King gang house, and one of his friends was wearing colors the officers knew to

12

represent the gang. [33] ¶¶ 2, 4. It is undisputed that Carrasquillo had his phone in the front pocket of his sweatshirt. [33] ¶ 11; [32-1] at 14 (53:3–7). It is also undisputed that the pocket was weighed down by something, and there was a "somewhat noticeable" bulge. [33] ¶¶ 8, 11; [32-1] at 14 (53:24–54:6). Carrasquillo did not tell the officers that he had his phone there. [32-1] at 13 (52:16–20). Young noticed that Carrasquillo was nervous and fidgeting with his waistband. [33] ¶ 8.

Because each of these facts can support reasonable suspicion for a frisk, Young had a "plausible reason to suspect" Carrasquillo was armed and dangerous. *See Green v. Newport*, 868 F.3d 629, 635 (7th Cir. 2017). There are no disputed facts that show the officers were violating Carrasquillo's clearly established rights, or that they knew they were doing so. *Beal v. Beller*, 847 F.3d 897, 905 (7th Cir. 2017). And Carrasquillo has put forth no cases showing Young's frisk violated clearly established law. *See Green*, 868 F.3d at 634–35. Here, there was a basis for the officers' belief that Carrasquillo may have been armed and dangerous, namely, the location and his presence with someone in gang colors, his nervousness and movements toward his waistband, and the bulge in his front pocket that he failed to explain to officers. The defendants are entitled to qualified immunity.

### C.  Civil Conspiracy

A conspiracy under § 1983 requires an underlying constitutional violation and an agreement among the defendants to inflict the unconstitutional harm. *Green v. Howser*, 942 F.3d 772, 778 (7th Cir. 2019). A § 1983 conspiracy claim is not an independent basis of liability. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Instead, the conspiracy claim is a theory that spreads liability to additional persons.

13

*Niehaus v. Liberio*, 973 F.2d 526, 532 (7th Cir. 1992). The only people who would be liable for conspiracy here are the same officers who are alleged to have committed the underlying constitutional violation—Young, Piscopo, and Tate. There is no reason for a separate claim. *See Ewell v. Toney*, 853 F.3d 911, 917–18 (7th Cir. 2017).[3]

### D. Indemnification

Because disputed issues of material fact prohibit the resolution of Carrasquillo's claim for excessive force against Officer Young and failure to intervene against Officer Piscopo, the indemnification claim against the City of Aurora remains pending. *See* 745 ILCS 10/9-102.

### E. *Monell* Liability

Finally, Carrasquillo claims that the City of Aurora is subject to liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), on the grounds that the city failed to adequately supervise, train, or set policy to prevent officers from violating Carrasquillo's rights and failed to properly discipline or investigate officers, which created an informal policy or custom that resulted in the violations of Carrasquillo's rights. [1] ¶¶ 55–65.

A municipality is a "person" that can be held liable for its own violations of the federal laws and Constitution under § 1983. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). To show municipal liability under § 1983 for the acts of its employees, first Carrasquillo must prove he was "deprived of a federal right." *Braun*

---

[3] Tate's entitlement to judgment as a matter of law on the theory that he condoned Young and Piscopo's conduct also entitles him to judgment as a matter of law on the conspiracy theory—there is no evidence that Tate agreed with Young or Piscopo to violate Carrasquillo's constitutional rights.

14

*v. Village of Palatine*, 56 F.4th 542, 552 (7th Cir. 2022). Then, Carrasquillo must show the deprivation was connected to a municipal action. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022). This may take the form of: "(1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policy making authority." *Id.* Inaction, if reflecting a municipality's "conscious decision not to take action," can also support *Monell* liability. *Bohanon*, 46 F.4th at 675 (quoting *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc)). This includes a "gap in express[] policies." *Id.* at 676 (quoting *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016)) (alteration in original). A gap can give rise to *Monell* liability "*only if* the [municipality] has notice that its program will cause constitutional violations." *Id.* (internal quotations omitted) (emphasis and alteration in original). Notice is typically established by a pattern of similar incidents. *Id.* at 676–77.

Next, Carrasquillo must show "culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations." *Braun*, 56 F.4th at 552 (quoting *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020)). Finally, Carrasquillo must demonstrate causation—that the "municipal action was the 'moving force' behind the constitutional injury." *Id.* This last requirement is a "rigorous causation standard" that requires a plaintiff to show a "direct causal link" between the challenged action and the violation of his constitutional rights. *Bohanon*, 46 F.4th at 675–76 (internal quotations omitted). If there is no underlying constitutional violation by a municipal employee, the city cannot be held liable under *Monell. Braun*, 56 F.4th at 552.

Carrasquillo's *Monell* claim rests on his right to be free from unreasonable searches, seizures, and excessive force under the Fourth Amendment. He does not cite an express policy that violates his rights. His complaint instead alleges that Aurora has a widespread practice or custom and that inaction by someone with final policy making authority caused the violations of his rights. As explained above, his claim for unreasonable seizure fails at the threshold inquiry. He was not deprived of his Fourth Amendment right when he was stopped by Young and Piscopo, because the officers had probable cause to stop him for rolling through a stop sign.

The city is entitled to judgment as a matter of law on all of Carrasquillo's *Monell* theories because Carrasquillo has submitted no evidence in support of them. *See Ellison v. United States Postal Serv.*, 84 F.4th 750, 759 (7th Cir. 2023) (summary judgment is the moment in a lawsuit when a party must reveal what evidence it has to convince a jury).

Claims based on a municipality's failure to act, like failing to supervise or train, are a "'tenuous' form of *Monell* liability." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019). The plaintiff must show that the failure to set policy, train, supervise, discipline, or investigate "amounts to deliberate indifference to the rights of persons with whom the [employee] come into contact." *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Generally, these claims "require[] proof of a prior pattern of similar constitutional violations." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020). However, there may be circumstances, for example, where "'the need for more or

16

different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that a factfinder could find deliberate indifference to the need for training." *Id.* (quoting *City of Canton*, 489 U.S. at 390). In that case, "a risk of constitutional violations can be so high and the need for training so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability." *Id.* This "single-incident theory is reserved for the 'narrow' circumstance when a municipality fails to train its employees, who 'have no knowledge at all of the constitutional limits' that govern their conduct in situations they are certain to encounter." *Flores*, 997 F.3d at 735 (Brennan, J., concurring) (quoting *Connick v. Thompson*, 563 U.S. 51, 64, 67 (2011)).

Carrasquillo has failed to make such a showing on any of his claims. He presents no evidence in the record showing a pattern of conduct that requires additional policies, training, supervision, investigation, or discipline. *Ruiz-Cortez*, 931 F.3d at 600. He has also not shown that Young and Piscopo have a history and pattern of excessive force or unlawful searches that requires more from the city. He cannot show "deliberate indifference," as he fails to show any "gap in express policies" that led to the violations he alleges, or that the city of Aurora was on notice that its current policies, training, supervision, investigation, or discipline were causing constitutional violations. *Bohanon*, 46 F.4th at 676; *Jenkins v. Bartlett*, 487 F.3d 482, 493 (7th Cir. 2007). And he fails to show causation—how the alleged failure to set policy, train, supervise, investigate, or discipline Young and Piscopo was the "moving force" behind any unconstitutional search or excessive force. Because Carrasquillo

17

has failed to put forth any evidence that there was no policy, training, supervision, investigation, or discipline on use of force or frisking suspects, or that there were gaps in those areas so obvious that failure can be characterized as deliberate indifference, the city is entitled to summary judgment on Carrasquillo's *Monell* claims.

## IV. Conclusion

Defendants' motion for summary judgment, [32], is granted in part and denied in part.

ENTER:

                                                  Manish S. Shah
                                                  United States District Judge

Date: December 19, 2024